Kathryn Ross
KATHRYN ROSS LAW
803 Hearst Avenue
Berkeley, Ca 94710
katie@kathrynrosslaw.com
Tel: (510) 210-8898

Attorney for Defendant
Max Urbina

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>URBINA, *et. al.*,<br><br>Defendants. | Case No. 21-cr-0347-YGR<br><br>**DEFENDANT MAX URBINA'S SENTENCING MEMORANDUM** |

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................1

I.   Motion for Downward Departure Pursuant to U.S.S.G. § 4A1.3(b) ........................................2

    A.   Mr. Urbina's criminal history category, determined to be a VI in the PSR, substantially overrepresents the seriousness of his criminal history. Thus, a downward departure pursuant to U.S.S.G § 4A1.3(b) is warranted ................................................................2

II.   Request for a Downward Variance ........................................................................5

    A.   Application of the 18 U.S.C. § 3553(a) factors to Mr. Urbina support a 20-month sentence ............................................................................................................5

    B.   Given the totality of the circumstances, imposition of a sentence concurrent to Mr. Urbina's pending state court matters is appropriate ........................................................11

    C.   Objections to the Recommended Terms of Supervised Release ....................................12

    D.   Mr. Urbina requests that this Court include a recommendation to the Bureau of Prisons as to where he shall serve his sentence ........................................................................13

CONCLUSION ................................................................................................................13

DEFENDANT'S SENTENCING
MEMORANDUM
Case No.: 21-cr-0347-YGR

# TABLE OF AUTHORITIES

**Cases**

*Gall v. United States,*
    552 U.S. 38 (2007).................................................................................................5

*Johnson v. Gill,*
    883 F.3d 756 (9th Cir. 2018)..............................................................................11

*Kimbrough v. United States,*
    552 U.S. 85 (2007).................................................................................................5

*Ponzi v. Fessenden,*
    258 U.S. 254 (1922).............................................................................................11

*Setser v. United States,*
    566 U.S. 231 (2012).............................................................................................11

*United States v. Carty,*
    520 F.3d 984 (9th Cir. 2008)................................................................................5

*United States v. Garcianava,*
    No. 22-CR-308-YGR (N.D. Cal.).......................................................................10

*United States v. Gregory,*
    322 F.3d 1157 (9th Cir. 2003)..............................................................................4

*United States v. Martinez,*
    77 F.3d 332 (9th Cir. 2003)..................................................................................4

*United States v. Nguyen,*
    No. 20-cr-00112-BLF (N.D. Cal.)......................................................................11

**Statutes**

18 U.S.C. § 3553(a).....................................................................................2, 5, 9, 13

18 U.S.C. § 3584...............................................................................................11

18 U.S.C. § 3585(a)...........................................................................................11

18 U.S.C. § 3621(b)...........................................................................................13

**Other Authorities**

U.S.S.G. § 4A1.3(b).....................................................................................2, 3, 4

U.S.S.G. § 4B1.1.................................................................................................3

## **INTRODUCTION**

On September 1, 2021, Max Urbina was indicted for a violation of 18 U.S.C. § 922(g)(1), Felon in Possession of a Firearm and Ammunition, for a transaction with an undercover informant that took place over three years earlier on April 27, 2017. At the time of the federal indictment, Mr. Urbina was in custody in Mendocino County for Possession for Sales of Marijuana, though at that time his criminal proceedings were suspended after being adjudged incompetent to stand trial. The Northern District of California did not *writ* him into federal custody after indictment because the government did not want to interrupt competency restoration. After Mr. Urbina was restored, the United States decided not to disrupt the state court proceedings. Despite a federal detainer being placed on Mr. Urbina, Mendocino County released Mr. Urbina on May 3, 2023, without any wraparound services. He was then arrested again in Santa Clara County on new drug charges on June 6, 2023. These cases are pending in Santa Clara County Superior Court. Mr. Urbina is before this Court on a federal *writ of habeas corpus ad prosequendum* from Santa Clara County that issued on July 14, 2023. *See* ECF Doc. 57. He was arraigned on August 16, 2023. *Id.* Doc. 61.

Mr. Urbina takes full responsibility for his actions. He waived his right to his trial, as well as his right to litigate constitutional issues. He views this federal case as a wakeup call. Looking at his history, one is struck by how much he could have benefitted from meaningful supervision and treatment earlier on – treatment and supervision offered with far more vigor in the federal system, which he would have presumably received if this case had been prosecuted and resolved in 2017. Mr. Urbina, who grew up in a home heavy on punishment and blame, and that stigmatized counseling, would have greatly benefitted from thoughtful intervention.

Mr. Urbina's guidelines range of 77-96 as a Criminal History VI is overstated, especially given the age of the offense and the missed opportunity of federal intervention had this prosecution happened when it occurred. The government recommends a sentence of 37 months and probation recommends 48 months.

DEFENDANT'S SENTENCING
MEMORANDUM
Case No.: 21-cr-0347-YGR

Following a full assessment of the sentencing factors set forth in 18 U.S.C. § 3553(a), including the history and characteristics of Mr. Urbina, this Court should determine that a sentence of 20 months is sufficient, but not greater than necessary to promote the interests of justice.

## I.   Motion for Downward Departure Pursuant to U.S.S.G. § 4A1.3(b)[1]

A.   <u>Mr. Urbina's criminal history category, determined to be a VI in the PSR, substantially overrepresents the seriousness of his criminal history. Thus, a downward departure pursuant to U.S.S.G § 4A1.3(b) is warranted.</u>

Probation concludes that Mr. Urbina's criminal history is a VI in the PSR. That determination stems from points assessed for the following offenses which occurred before and after the date of this offense, April 27, 2017:

- 2012 - Santa Clara County Superior Court, Possession of a Narcotic Controlled Substance, a felony at the time of the conviction, and Attempted Destruction/Concealment of Evidence. (2 points: the felony was reduced to a misdemeanor in 2015.)

- 2015 - Santa Clara County Superior Court, Possession of Marijuana for Sale, felony, Possession of a Controlled Substance, misdemeanor. (2 points: the felony was reduced to a misdemeanor in 2020.)

- 2016 - Santa Clara County Superior Court, Possession/Purchase a Controlled Substance, Possession of Marijuana for Sale, felonies at the time of conviction. (2 points: both felonies were reduced to misdemeanors in 2018 and 2020.)

- (October) 2017 – Santa Clara County Superior Court, Possession of Marijuana with Two or More Prior Convictions (2 points.)

- 2019 – Santa Clara County Superior Court, Threaten Crime with Intent to Terrorize. (3 points.)

- 2021- Mendocino County Superior Court, Possession of Marijuana with Two or More Prior Convictions. (3 points.)

---

[1] Mr. Urbina's plea agreement proscribes only a request for a downward departure of his offense level: "I agree that the Sentencing Guidelines should be calculated as set forth below, and that I will not request a downward departure under the Sentencing Guidelines from that offense level." *See* ECF Doc. 71 at 4: 18-19.

2                                                        DEFENDANT'S SENTENCING
                                                          MEMORANDUM
                                                          Case No.: 21-cr-0347-YGR

Mr. Urbina respectfully submits that, while these offenses do not represent exemplary behavior on his part, the totality of the points over-represents Mr. Urbina's criminal history, warranting a downward departure pursuant to U.S.S.G. § 4A1.3(b). That section provides:

> If reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, a downward departure is warranted.

While it is clear that Mr. Urbina is perpetually engaging in crimes involving the sale of marijuana and other drugs, it is also noteworthy that, after the passage of Proposition 64, his convictions prior to the present offense are now misdemeanors.

The defense appreciates and accepts that criminal history calculations must include convictions that occurred subsequent to April 27, 2017, the date of this offense. It is nevertheless noteworthy that at the time of the current offense, Mr. Urbina had 6 criminal history points. This is not of trivial significance because, had he been federally prosecuted at that time, he would have been a Criminal History Category III with a significantly lower guidelines calculation.

Moreover, under the current law, all of his prior convictions for marijuana and drug possession at the time of the offense would now be misdemeanors, an objective indicator that his Criminal History category would have been over-represented even under a 2017 calculation. While not a career offender then or now, Note 4 of the "Career Offender" guideline provision (U.S.S.G. § 4B1.1) offers support to the argument that felonies amended to misdemeanors risk an overstatement of a criminal history calculation based on those offenses. That note states:

> **Departure Provision for State Misdemeanors** – In a case in which one or both of the defendant's 'two prior felony convictions' is based on an offense that was classified as a misdemeanor at the time of the sentencing for the instant federal offense, application of the career offender guideline my result in a guideline range that substantially overrepresents the seriousness of the defendant's criminal history or substantially overstates the seriousness of the instant offense. In such a case, a downward departure may be warranted without regard to the limitation in § 4A1.3(b)(3)(A).

DEFENDANT'S SENTENCING
MEMORANDUM
Case No.: 21-cr-0347-YGR

1   Here, by analogy, the same reasoning applies to justify a downward departure from a

2   Category VI to a Category III, when Mr. Urbina's prior offenses at the time he committed the instant

3   offense are now misdemeanors.

4   Mr. Urbina never eluded federal prosecution. He missed the opportunity for concurrent time

5   in Mendocino County where his was doubled from 16 to 32 months for his 2019 conviction for

6   "Threaten Crime with Intent to Terrorize". He faces an enhanced (doubled) sentence in his state court

7   cases for that same 2019 offense. Given this, calculating Mr. Urbina's criminal history to encompass

8   the offenses that happened *after* this 2017 case is excessive and prejudicial. Courts recognize that a

9   downward departure pursuant to a U.S.S.G. § 4A1.3(b) is an appropriate way to offset the prejudice

10  caused from the accumulation of criminal history points attributed to government delay. For example,

11  in *United States v. Gregory*, 322 F.3d 1157 (9th Cir. 2003), the defense argued that the defendant's

12  speedy trial rights were violated, in part, because delay prevented "grouping" under U.S.S.G § 3D1.2

13  with an earlier related case. The Court explained that a downward departure pursuant to U.S.S.G. §

14  4A1.3(b) was an appropriate remedy for such prejudice: "Here…the district court has at least two

15  options available to mitigate the prejudice that might result from the government's choice to indict

16  Gregory on the money laundering charges after he pled guilty and served his time on the drug

17  offenses. First, it may depart downward so that Gregory's criminal history category equals what it

18  would have been absent the government's negligence." *Id.* at 1164-65. (*See also*, *United States v.*

19  *Martinez,* 77 F.3d 332 (9th Cir. 2003), also a "grouping" issue: "Because the district court could

20  avoid any unfairness to Martinez under the guidelines by using permitted departures, prejudice

21  caused by delay, even if we assume that it would otherwise implicate the due process clause, is

22  speculative. The prejudice will only occur if the district judge does not exercise her discretion to

23  depart." *Id.* at 337.)

24  As such, Mr. Urbina respectfully requests that this Court grant his Motion for a  Downward

25  Departure pursuant to U.S.S.G. § 4A1.3(b), finding that reliable information indicates that the

26  U.S.S.G. Criminal History Category VI attributed to him in the PSR substantially over-represents the

27  seriousness of his criminal history, and indicates in the final Judgment and in its Statement of

28

4

DEFENDANT'S SENTENCING
MEMORANDUM
Case No.: 21-cr-0347-YGR

Reasons that a Criminal History Category III, based on the accrual of six U.S.S.G. Criminal History Points, more adequately represents the seriousness of his criminal history.

## II.    Request for a Downward Variance

A.   <u>Application of the 18 U.S.C. § 3553(a) factors to Mr. Urbina support a 20-month sentence.</u>

As set forth in 18 U.S.C. § 3553(a), the court shall impose a sentence that is "sufficient, but not greater than necessary" to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence; to protect the public; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment. The Court begins by determining the applicable Guidelines range as the Guidelines are the "starting point and the initial benchmark" and are to be "kept in mind" during the sentencing process. *United States v. Carty,* 520 F.3d 984, 991 (9th Cir. 2008) (*citing Kimbrough v. United States*, 552 U.S. 85 (2007); *Gall v. United States*, 552 U.S. 38 (2007)). However, the Guidelines range shall not be given more or less weight than any other factor: "While the Guidelines are to be respectfully considered, they are one factor among the § 3553(a) factors that are to be taken into account in arriving at an appropriate sentence." *Carty*, 520 F.3d at 991 (*citing Gall,* 552 at 50; *Kimbrough,* 552 at 101-02).

Mr. Urbina respectfully submits that application of the § 3553(a) factors support the imposition of a sentence of 20 months. Each factor will be addressed in turn.

1.   <u>History and Characteristics of Max Urbina</u>

a.   Family Dynamic

*Shame* and *blame*. These words characterize Mr. Urbina's upbringing. One need only read his brother's sentencing memorandum to understand the extent that Mr. Urbina serves as the family scapegoat.[2] In addition to his brother's transgressions, Mr. Urbina is blamed for his parents' divorce

---

[2] *See* ECF Doc. 49 (Marco Urbina Sentencing Memoranda), "It is likely Mr. (Marco) Urbina's marijuana use began as a method of escape from his home environment. He first started using marijuana at an early age, on the verge of adolescence. He was the younger brother of the problem child, Max, who was in and out of Juvenile Hall and in trouble at school, for as long as Marco could remember. At home, at the time, his parents had been battling over the behavior related to Marco's older brother Max, for years. Ultimately, Mr. Urbina's father left - moved out, and for a time had no contact with his mother, brother or himself."

DEFENDANT'S SENTENCING
MEMORANDUM
Case No.: 21-cr-0347-YGR

and even his father's recent stroke. Labeled as the overweight "troublemaker", we see a picture of a kid bullied by his peers, shamed by his father, and viewed as the family disappointment.

Born in New Jersey, Max Urbina is the 32-year-old son of Max Augusto Urbina (age 58) and Claudia Urbina (age 55). It is clear that Mr. Urbina grew up characterized by his parents as "the problem child". His parents cited their son's behavior as a factor in their divorce; however, this appears to have been an excuse, given that his father then dropped out of his sons' lives and left their mother alone to raise them. After his father left, Mr. Urbina's mother could no longer afford the family home. As a result, young Max Urbina was forced to change schools, which left him feeling isolated and displaced. Shortly after, he became chronically absent from school and was placed in juvenile custody. Exhibit 1, *Max Urbina Social History*, at 2, (hereinafter "Exhibit 1").

Mr. Urbina's upbringing was heavy on punishment and blame, with little thoughtful intervention. It is clear that Mr. Urbina's father, Max Senior, characterized by Mr. Urbina's mother as "macho" and "the boss", was hard on him. Max Senior teased him, calling him "Gordo" as a way to demean his weight. (Mr. Urbina was called "Big Max" by his peers.) According to Mr. Urbina's mother, he and his father argued incessantly. When Ms. Urbina suggested that Max Senior seek counseling or take parenting classes to help their relationship, Max Senior refused and asserted that "Latino parents neither pandered to their children, nor sought counseling." Exhibit 1 at p. 2.

For her part, Mr. Urbina's mother describes being overwhelmed with being a single mother: "Claudia explained that although Max Snr helped a little financially, she was the one who supported her sons. Claudia questioned why, having provided a home and food for her sons, having loved and taken them to school, they didn't listen to her." Exhibit 1 at p. 2. She even went so far as to be in favor of Mr. Urbina's detention as a juvenile because she believed that it would keep him off the streets and out of trouble. Exhibit 1 at p. 3. This family dynamic provides insight as to why Mr. Urbina turned to marijuana for comfort at a very young age. He has been using marijuana since he was 14 years old, with daily use starting at age 17. *See* PSR, ¶ 30.

The blaming persists today. As noted, Mr. Urbina is blamed for his brother's transgressions. Mr. Urbina is also blamed for his father's recent severe stroke. Ms. Urbina reported to probation that

DEFENDANT'S SENTENCING
MEMORANDUM
Case No.: 21-cr-0347-YGR

Max Senior does not know about Mr. (Max) Urbina's custody status because she fears that will impact his already declining health. *See* PSR, ¶ 54. However, to the defense, she attributed Max Senior's decline to the stress his son, Max Urbina, put on him. Exhibit 1 at p. 3.

Mr. Urbina has an endearing quality of always expressing gratitude for everyone in his life and all they have done for him, while downplaying or ignoring anything that may have been hard. Noteworthy is the extent to which he erroneously accepts blame for the actions of his brother. Mr. Urbina appears to have thoroughly adopted the script that he is responsible for his brother's criminal behavior. For example, he (mistakenly) cited his brother's lack of criminal history at the time of this offense as evidence that he (Max) is responsible for Marco's transgressions. Exhibit 1 at p. 4. This does not comport with the fact that at the time of this offense, Marco's criminal history was more serious than Mr. (Max) Urbina's, including illegal possession of a weapon with a gang enhancement. *See* ECF Doc. 49 at 8. Mr. Urbina downplays any conflict with his parents, despite reports to the contrary from his mother. Exhibit 1 at p. 2.

Mr. Urbina is someone who has great difficulty talking about his childhood in a way that could be considered disrespectful to his parents. He accepts full responsibility for his actions and does not want to be viewed as blaming his parents for his mistakes. That said, Mr. Urbina clearly suffered as a child, as reflected by the often bizarre and arguably emotionally abusive comments his father would make about his appearance, and the extent to which they blamed him for the family troubles rather than find the tools, such as therapy and parenting classes, to help them better understand their son's struggles. Mr. Urbina has a hard time facing the rampant shame in his upbringing. He has yet to come to terms with the pain from his childhood and would benefit greatly from therapy during federal supervision to further explore these issues.

When Mr. Urbina was only 15 years old, he became a father. His son, also named Max, is now 15 years old. Mr. Urbina hopes to be a better father and spend time with his son and be there for him when he is released. This is another area where Mr. Urbina would greatly benefit from the help offered through federal supervision.

DEFENDANT'S SENTENCING
MEMORANDUM
Case No.: 21-cr-0347-YGR

b.  Mental Health

Mr. Urbina had a mental health breakdown on July 25, 2021, that led to an involuntary mental health commitment pursuant to California Welfare and Institutions Code section 5150. While committed, a records check revealed a felony arrest warrant out of Mendocino County for a Possession for Sale of Marijuana on February 21, 2021. *See* PSR, ¶ 34. When transferred to Mendocino County, Mr. Urbina's mental health deteriorated even more. He became paranoid and believed that his family had been killed, was on a suicide watch and was forcefully medicated. Exhibit 1, at p. 4. As noted, he was adjudged incompetent on August 27, 2021.

Against this backdrop, the defense wholeheartedly agrees with probation's recommendations for vocational mental health and substance abuse counseling. *See* PSR Recommendations, 1, 2, 4, at pp. 3-4.

2.  <u>Nature and Circumstances of the Offense.</u>

On April 27, 2023, a confidential human source (CHS) texted the co-defendant, Marco Urbina, to arrange a meeting for a sale of a firearm. *See* PSR, ¶ 7. After Marco Urbina arranged for a time and place, Max Urbina showed up at the agreed time. There, Max Urbina provided the CHS with a gun in exchange for $1000.00. Mr. Urbina had previously been convicted of felonies (now reduced to misdemeanors due to a change in the law). According to the case agent, Mr. Urbina and his brother showed up in a previous investigation into a separate gun case, which involved Norteño gang members. That case agent was not aware of any gang membership by Max Urbina. *See* PSR, ¶¶ 9&10. He has no gang-related convictions or pending gang-related charges. *See* PSR, ¶¶ 25-42. This is Max Urbina's only gun-related conviction.

Also notable is what *did not* happen after Mr. Urbina committed this offense. Mr. Urbina was not immediately arrested or indicted. Mr. Urbina's case was a very small piece in a much larger federal investigation, which, because of that investigation's scope, ultimately delayed his indictment to 2021. At that time, Mr. Urbina was in custody of Mendocino County where his criminal proceedings were suspended on August 27, 2021, having been declared incompetent to stand trial. He was restored to competency in July of 2022. *See* PSR, ¶ 34. Not wanting to interfere with competency

DEFENDANT'S SENTENCING
MEMORANDUM
Case No.: 21-cr-0347-YGR

restoration, the United States Government opted to not bring Mr. Urbina to federal court on a *writ*. Then, once Mr. Urbina was restored to competence and the state criminal case resumed, the government did not want to interfere with Mendocino County's prosecution. When Mr. Urbina finished his 32-month sentence out of Mendocino County (he served all of his time in the local jail on a "paper commitment"), Mendocino County simply chose not to honor his federal detainer. Santa Clara County refused to pick up Mr. Urbina, apparently telling authorities to provide him with a court date. Thus, after many months of mental incompetency, he was released without any wrap-around services. Without any direction or supervision, it is no surprise that Mr. Urbina returned to his old habits and was arrested just weeks later on June 6, 2023, for drug sales.

Mr. Max Urbina accepts responsibility for his actions in this case. He resolved the case early and waived his right to litigate any constitutional issues as well as his right to appeal.

    3.   <u>Need for the Sentence Imposed</u>

        a.   Protection of the Public and Deterrence.

One of the other factors for this Court to consider is the need for the sentence imposed to provide *just* punishment for the offense: to provide adequate deterrence to criminal conduct and to protect the public from future crimes by the defendant. 18 U.S.C. § 3553(a)(2)(A),(B),(C). Possessing a gun with a felony conviction is serious, and not to be trivialized. It is nevertheless noteworthy that had Mr. Urbina committed this offense under the amended drug laws with the same prior convictions at the time this occurred, he would not have been a felon.

Deterrence is difficult to assess because of the age of this case. On the one hand, Mr. Urbina's subsequent crimes might suggest that he is undeterred by convictions and not capable of rehabilitation. However, this argument is belied by the fact that, as noted, this is Mr. Urbina's first encounter with the federal system – a system that entails more comprehensive supervision, counseling, drug treatment, and job placement. Probation notes that it has no record of supervision after his release from Kern State Prison from his most serious conviction in 2019 for Threats with the Intent to Terrorize (Cal. Pen. Code § 422). *See* PSR, ¶ 33. The fact that, after a finding of mental

DEFENDANT'S SENTENCING
MEMORANDUM
Case No.: 21-cr-0347-YGR

incompetency, Mendocino released him with no wraparound services is indicative of the lack of oversight Mr. Urbina has received following his convictions.

Notably, Mr. Urbina's brother, who had a state court criminal history, thrived on his federal pretrial release with its drug programs and job training. ("Mr. [Marco] Urbina is aware, very much due to the drug use supervision and counseling he has received after being arrested in May 2021, that his bad choices and retreat into drug influence allowed him to use the bad judgement." *See* ECF Doc. 49: 6:6-9 (Marco Urbina Sentencing Memorandum).

On federal supervision, Mr. Urbina will receive the drug and mental health treatment, and job training that he needs. These services will deter him from continuing the habit of drug sales and help him address the underlying causes of his drug use. Finally addressing the underlying factors that have heretofore underscored his criminal history will protect the public.

4.   A 20-month sentence addresses the need to avoid unwarranted sentencing disparities among defendants found guilty of similar conduct.

Probation addressed the cases nationally (*See* PSR, ¶ 84) and, for all of the reasons set forth *infra*, Mr. Urbina submits that comparisons utilizing his overstated criminal history fail to offer sufficient grounds for comparison.

Mr. Urbina's co-defendant in this matter, his brother Marco, who at the time of the offense had a prior conviction for illegal possession of a gun with a gang enhancement, received a sentence of 15 months from this Court. *See* ECF Doc. 52. This sentence took into account his pending Santa Clara County case, C2106566. (This is also one of Max Urbina's current pending state cases.)

Of the related cases noted by probation, only one, *United States v. Garcianava,* No. 22-CR-308-YGR (N.D. Cal.), involved a conviction of 18 U.S.C. §922(g)(1), Felon in Possession of a Firearm and Ammunition. That case occurred in 2018 and was charged on September 9, 2021. This Court imposed a 20-month sentence on June 22, 2023. *Id.,* ECF Doc. 57. In contrast to Mr. Urbina, the defendant there had prior convictions for Assault with a Deadly Weapon with a gang enhancement and Carrying a Concealed Firearm, for which he received a 2-year prison term (served locally) before his federal case. *Id*., ECF Doc. 55 at 2 (United States Sentencing Memorandum).

Mr. Urbina accepts this Court's ruling in his co-defendant's case, as well as the rulings of other courts in the Northern District, that a reduction from a felony to a misdemeanor after committing the current offense does not bar the increase in his offense level under §2K2.1(a)(2). (*See United States v. Nguyen*, No. 20-cr-00112-BLF (N.D. Cal.)). Mr. Urbina nevertheless submits that his overstated criminal history caused by the delay in his case provides a compelling basis to impose a sentence of 20 months, on par with his co-defendant and the related case.

B.    Given the totality of the circumstances, imposition of a sentence concurrent to Mr. Urbina's pending state court matters is appropriate.

While it is understandable that, in light of his subsequent convictions and arrests, Mr. Urbina is perceived as a habitual criminal who cannot learn from his mistakes, this belief does not take into account lack of meaningful intervention and services to assist with his rehabilitation. With job training, drug treatment, and mental health treatment, Mr. Urbina's risk of re-offending is significantly reduced.

As Mr. Urbina awaited disposition of three Santa Clara County cases (C2106566, C2108356, C2307409) the federal government brought Mr. Urbina into federal custody by way of a writ of habeas corpus *ad prosequendum*. As he was already held in custody by state authorities when the federal authorities executed their *writ*, the State of California holds primary jurisdiction over Mr. Urbina. *See, e.g. Johnson v. Gill,* 883 F.3d 756, 761-62 (9th Cir. 2018) (*citing Ponzi v. Fessenden*, 258 U.S. 254, 260 (1922), discussing the general rule that the first sovereign to arrest a defendant obtains primary jurisdiction over her as against other sovereigns.). Thus, for purposes of 18 U.S.C. § 3585(a), Mr. Urbina's federal sentence has not yet commenced.

Pursuant to 18 U.S.C. § 3584, this Court may specifically order Mr. Urbina's sentence to run concurrent to his state sentence, notwithstanding the fact that the state sentence has yet to be imposed. *See Setser v. United States,* 566 U.S. 231 (2012). Mr. Urbina requests that this Court run his current sentence concurrent to his three pending cases in Santa Clara County. Other than for a little over one month, Mr. Urbina has been in custody since July of 2021. Two of his pending cases (C2106566 and C2108356) are alleged to have happened close in time to his incompetency finding in

DEFENDANT'S SENTENCING
MEMORANDUM
Case No.: 21-cr-0347-YGR

Mendocino County.[3] The third case (C2307409) is alleged to have occurred after his release, without services, from Mendocino County. Probation and the government do not object to this request. *See* ECF Doc. 71, 6:23-26; *See* PSR Sentencing Recommendation, p. 2.

Mr. Urbina already lost the potential for a concurrent sentence when his prosecution was delayed while he was in custody in Mendocino. As currently charged in state court, the best possible sentence Mr. Urbina can receive in his pending state cases is 32 months in prison, because his 2019 conviction for "Threaten Crime with Intent to Terrorize" is charged as a "strike" prior. A concurrent, 20-month sentence in this case appropriately takes into account the impact of the delay and his seven months of lost credit, along with the reasons set forth above in support of the propriety of a downward departure and variance.[4]

C.   Objections to the Recommended Terms of Supervised Release

1.   Mr. Urbina requests that this Court waive the requirement that he pay costs associated with his supervised release treatment conditions.

As part of its recommended terms of supervised release, Probation has requested that this Court impose mental health treatment (special condition #2) and testing for drug abuse (special condition #4), and has requested that Mr. Urbina be required to pay part or all of the cost of this treatment at an amount not to exceed the cost of the treatment.[5] Given that Mr. Urbina is indigent, and all of the struggles inherent in re-entering society after a term of incarceration, Mr. Urbina respectfully requests that this Court waive any requirement that Mr. Urbina be responsible for treatment-related costs associated with his term of supervised release.

---

[3] *See* PSR ¶¶34, 40, 41. C2106566 occurred on May 12, 2021, and C2108356 occurred on June 20, 2021. Mr. Urbina was placed on a "5150" hold on July 25, 2021, before his arrest on the Mendocino arrest warrant. He was declared incompetent on August 27, 2021.

[4] Should this Court grant Mr. Urbina's request, according to Dominic Ayotte, legal counsel for the Bureau of Prisons, in addition to stating on the record that it is this Court's intention that Mr. Urbina's federal sentence run concurrent to his future state court sentence, this Court must also include the following on page two of Mr. Urbina's Judgment of Conviction: "This sentence is to commence upon imposition and is to run concurrent with the state court sentence out of Santa Clara County C2106566, C2108356 and C2307409."

[5] *See* PSR recommendation at pp. 3&4.

DEFENDANT'S SENTENCING
MEMORANDUM
Case No.: 21-cr-0347-YGR

D. <u>Mr. Urbina requests that this Court include a recommendation to the Bureau of Prisons as to where he shall serve his sentence.</u>

Mr. Urbina's family and support system is in Northern California. As such, Mr. Urbina respectfully requests that this Court recommend to the Bureau of Prisons that he be placed in a facility consistent with his security designation as near to Northern California as possible.[6]

<b><u>CONCLUSION</u></b>

Max Urbina takes full responsibility for his actions. He is hopeful that, with the thoughtful intervention of federal supervision, he can set his life on a better path. Other than one month, Mr. Urbina has been in custody since July 2021. He faces substantial time in his pending state court cases.

Upon consideration of the 18 U.S.C. § 3553(a) factors, Max Urbina submits that a 20-month sentence concurrent to his state court cases is sufficient, but not greater than necessary, to serve the interest of justice.

Dated:  March 14, 2024

KATHRYN ROSS LAW

 _/s/Kathryn Ross_____
Kathryn Ross

Attorney for Defendant
Max Urbina
_____

---

[6] This request is supported by 18 U.S.C. § 3621(b), as amended by the First Step Act, which states that the Bureau of Prison shall, subject to security designation, programming, and health needs, designate an individual's place of imprisonment "in a facility as close as practicable to the prisoner's primary residence, and to the extent practicable, in a facility within 500 driving miles of that residence."

DEFENDANT'S SENTENCING
MEMORANDUM
Case No.: 21-cr-0347-YGR