ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

MARTHA A. BOERSCH (CABN 126569)
Chief, Criminal Division

CHRISTOFFER LEE (CABN 280360)
DANIEL N. KASSABIAN (CABN 215249)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    FAX: (415) 436-7234
    christoffer.lee@usdoj.gov
    daniel.kassabian@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> MAX AUGUSTO URBINA, <br><br> Defendant. | Case No. CR 21-00347 YGR <br><br> **UNITED STATES' SENTENCING MEMORANDUM** <br><br> Date: March 21, 2024 <br> Time: 2:30 p.m. <br> Ctrm: 1, 4th Floor <br> Judge: The Honorable Yvonne Gonzalez Rogers |

## I. SYNOPSIS

The United States respectfully submits this Sentencing Memorandum for defendant Max Urbina. He has pleaded guilty to a single count of violating 18 U.S.C. § 922(g)(1)—Felon in Possession of a Firearm and Ammunition—for possessing a loaded AP-9 pistol while selling it for $1,000. Per the guidelines, Mr. Urbina's total offense level (TOL) is 21 and his criminal history category (CHC) is VI, for a guidelines range of 77-96 months. JSIN data states that similarly situated defendants over the past five fiscal years received 71 months on average, with 77 months as the median. Pursuant to the parties' plea agreement under Fed. R. Crim. Proc. 11(c)(1)(B), the government agreed to recommend a sentence of 37 months imprisonment pursuant to 18 U.S.C. § 3553(a). The government does so here.

## II. THE DEFENDANT'S CRIMINAL CONDUCT BEFORE THE CHARGED OFFENSE

Before the charged offense on April 27, 2017, Mr. Urbina had several stints in juvenile hall and then county jail since the age of 14. PSR ¶ 26-31. He had suffered three felony convictions in state court for drug offenses, with the primary offense being possession of marijuana for sale. *Id*. ¶¶ 28, 30-31. Consequently, he had twice been sentenced to a year in jail (or 6 months actual, per California law) and placed on probation, and repeatedly engaged in felonious conduct while on probation. *Id*. ¶¶ 28 & 31. That pre-offense conduct affords him 5 criminal history points, so he was a CHC III at the time he committed the charged offense.

## III. THE DEFENDANT'S OFFENSE CONDUCT

On April 27, 2017, while he was 26 years old, Mr. Urbina possessed and sold an A.A. Arms, Inc. model AP 9 pistol, bearing serial number 052752 (pictured here), that was loaded with three rounds of 9 mm Luger ammunition for a "rack"—i.e., $1,000. *See generally* PSR ¶ 7-8.



Specifically, the day prior, on a confidential human source (CHS) texted with an unindicted co-conspirator—a San Jose Grande gang member—for the sale to the CHS this pistol for a "rack." *Id*. Then, on April 17, 2017, in the early afternoon, the CHS texted with defendant Urbina's brother and co-defendant, Marco Urbina, to arrange a meeting for the sale of a firearm that day around 2:30 p.m., in the parking lot of Buffalo Wild Wings in San Jose. *Id*. Then at around the agreed-upon time, defendant Urbina drove a black Mercedes to the parking lot and parked. The CHS entered Mr. Urbina's vehicle and sat in the backseat. Mr. Urbina then asked the CHS if he was "trying to cock this thing, this is the

1  one," and drove his vehicle a short distance while holding the AP-9, in his right hand. *Id*. Defendant
2  Urbina then told the CHS that there were some bullets in pistol as well, showed him a magazine with
3  bullets in it, and told him it comes with a case (as shown above). *Id*. Defendant Urbina also explained
4  that the CHS had talked to his brother, Marco Urbina, earlier. Defendant Urbina then gave his phone
5  number to the CHS and told him to put it under "Max" or "Mad Max." *Id*. Defendant Urbina then
6  stated he might have another one and the CHS said he could buy one a week. When the CHS handed
7  defendant Urbina the money, and defendant Urbina stated, "that's a fresh one right there," in reference
8  to the pistol, and the CHS responded, "I'm not even gonna touch it." The CHS then exited defendant
9  Urbina's vehicle carrying the black case and entered his own vehicle.

Given defendant Urbina's two prior controlled substance convictions, and accounting for acceptance of responsibility, he has a TOL of 21 for this conduct. *Id*. ¶¶ 15-24. With a CHC III, his Guidelines sentence at the time of the offense was 46–57 months imprisonment. Per JSIN, during the last five fiscal years, the 949 similarly situated defendants (same offense, TOL, and CHC) who were imprisoned received an average length of 45 months, and the median length was 46 months.

## IV. THE DEFENDANT'S CRIMINAL CONDUCT AFTER THE CHARGED OFFENSE

Because the offense conduct was a controlled buy that was part of a much larger gang investigation—including targets up to the inner circle of the Nuestra Familia prison gang—Mr. Urbina was not indicted until September 1, 2021, which was many years after the offense conduct. PSR ¶ 1. Sadly (but not surprisingly), Mr. Urbina's criminal conduct continued without any pause given the lack of the immediate intervention of a federal case. Mr. Urbina committed yet another marijuana sale felony offense later in 2017. Then, he engaged in a serious (but not violent) strike felony under California law in 2019: criminal threats. That resulted in a 2-year prison term. *Id*. ¶ 33. On May 19, 2019, around noon, Mr. Urbina threatened the life of a friend of his recent ex-girlfriend at the time, throwing a brick into the window of a car parked at the victim's residence, and when the victim saw him standing outside her home, Mr. Urbina waived a black handgun and stated, "Yeah I did that you dumb bitch," then drove off. *Id*. Later that same day, around 3:30 p.m., the victim was shot at in her home by a person who generally matched Mr. Urbina's description. *Id*. By then, she had received multiple text messages from him that were threats—i.e., that he would come after come after her and her children, along with many

incoherent statements. Then on June 3, 2019, around 5 pm, the apartment of his recent ex-girlfriend was set ablaze—Mr. Urbina still had the key, given they had been in a relationship for 5 years before then. The ex-girlfriend had been previously informed that Mr. Urbina had threatened that he was going to hire someone to "take care of her" and burn her apartment. *Id*. She also had been threatened by Mr. Urbina in the past, per prior filed police reports.

After his prison stint for this offense, he picked up three additional state court cases in Santa Clara County in 2020 and 2021 for DUI (drugs), and twice for manufacture/sale of controlled substances. *Id*. ¶¶ 39-41. These remain pending at this time given subsequent events described below.

On February 27, 2021, Mr. Urbina was arrested in Mendocino County for possession of marijuana for sale—still a felony for him under California law, given his prior convictions for the same. *Id*. ¶ 34. He was then arrested on June 25, 2021 for failing to appear for the resulting case. He was committed for being mentally incompetent to stand trial a month later, and stayed that way for eight months—through April 28, 2022. (The PSR incorrectly states he was found incompetent through July 27, 2022). *Id*. The federal indictment issued while Mr. Urbina was facing incompetency proceedings in state court. Ultimately, once his competency was restored in his state case, he faced trial until he pleaded guilty for credit for time served on May 3, 2023, having spent 16 actual months in Mendocino County jail for a 32-month "prison" sentence with credits.

Unfortunately, due to a mistake by the Mendocino County Sheriff's Office, Mr. Urbina was not brought to federal custody on May 3, 2023—instead, he was released. Of note, Mr. Urbina also had outstanding warrants for his three pending state cases in San Jose, and the Santa Clara County Sheriff's Office opted to have him released with a court date rather than execute on their state court warrants. That might have caused some confusion, given that the federal warrant also issued from this Court's San Jose Division. In any event, Mr. Urbina was placed on state post-release community supervision (PRCS), but instead of reporting to his probation officer, he was arrested on June 6, 2023 in San Jose on yet another controlled substance sale offense. PSR ¶ 42.

Given that he was housed at Elmwood jail in Milpitas for all his Santa Clara County cases, the United States coordinated with that county DA's Office and sought to have Mr. Urbina transferred to federal custody at Santa Rita jail in Dublin (30 miles east of Milpitas) to enable concurrent prosecutions

of Mr. Urbina's remaining cases.  The government anticipates that Mr. Urbina will be returned to state custody immediately following his sentencing here to resolve his remaining active state cases.

Considering his post-offense conduct, Mr. Urbina now has a criminal history score of 13, and thus is a CHC VI, even without conviction points for his four pending offenses in Santa Clara County, committed from 2021 through 2023.  Thus, his Guidelines sentence is 77-96 months.  Per JSIN, during the last five fiscal years, the 1019 similarly situated defendants (same offense, TOL, and CHC) who were imprisoned received an average length of 71 months, and the median length was 77 months.

## V.    SENTENCING RECOMMENDATION

The government recommends that the Court sentence Mr. Urbina to 37 months imprisonment. The government also does not oppose a request by Mr. Urbina that the sentence imposed in the instant case be run concurrent to any future sentence imposed in his pending Santa Clara County cases. Considering the factors set forth in 18 U.S.C. § 3553(a), the government believes this proposed sentence is sufficient, but not greater than necessary, to fulfill the needs of sentencing.  Mr. Urbina's crime is serious: he sold a loaded firearm while being a felon.  Of note, there are indications that he was a gang member or affiliate at that time.  The CHS was introduced to him and his brother through a San Jose Grande gang member.  Also, Mr. Urbina has tattoos—now dated—from that timeframe that are indicative of prior gang membership.  Per San Jose Police Department report no. 2017-295-0659, he has "SSSJ," which stands for "South Side San Jose," tattooed on his neck.  He also has "SS" for "South Side" tattooed on the back of his legs, possibly connected to the South Side Gang in San Jose.  Also, when they met in 2017, the CHS recognized Mr. Urbina as a member of United Northern Locos Villains (UNLV) gang from their time as juveniles at the California Youth Authority.

For purposes of this recommendation, the government has accounted for the fact that it delayed prosecution for justifiable reasons, unrelated to Mr. Urbina.  Because he perpetrated the charged offense in 2017, the recommendation reflects Mr. Urbina's significant criminal history beforehand, but not after. The government will assume that federal intervention back in 2017 would have changed the course of Mr. Urbina's conduct and deterred the future criminality that then ensued.  Critically, he would have still faced a Guidelines sentence of 46–57 months imprisonment back then, with actual sentences for similarly situated defendants being 46 months, even if the government had swiftly and immediately

arrested him and charged him. And while the PSR does not note any significant trauma during his childhood (*see* PSR ¶¶ 48-54), his counsel has proffered otherwise, and he professes to have drug and alcohol-related problems (*id*. ¶ 60-61). Given the government's approach and these mitigating factors, the government has recommended a significant downward variance that about 50% lower than the low-end of a Guidelines sentence of 77 months.

The government notes that, while the parties agree that a downward variance is appropriate, the defense's recommendation goes too far in seeking a sentence that is almost 75% below the guidelines. Comparisons to specific cases, even related ones, to justify the recommendation does not result in justice in this case because each case is unique. For example, this Court sentenced Hector Garcianava (CR 22-308-YGR) to 20 months for the same charge, 18 U.S.C. § 922(g), for an offense that also happened in 2017 but was not indicted until September 2021. There also are significant differences, however, in that Mr. Garcianava had a lower TOL of 19, and he was actually a CHC III because he had not been convicted of any crimes since the offense conduct—Mr. Urbina's is not similarly situated, and gives himself too much credit by suggesting he is.

Most significant is that the government's recommendation accounts for graduated sentencing. Mr. Urbina was previously convicted of a California strike offense in 2017, which resulted in a two-year prison term, that was probably served at 85%—i.e., over 20 months. A greater term is necessary for deterrence and to demonstrate that federal cases are meaningful. By contrast, the defense recommendation seeks the same as his most significant state sentence, which had no deterrence effect given the criminality that ensued soon after release—indeed, he most recently served a 32-month sentence for a drug sales conviction, with 16 months in local jail.

DATED: March 14, 2024

Respectfully submitted,

ISMAIL J. RAMSEY
United States Attorney

_____/s/_____
DANIEL N. KASSABIAN
Assistant United States Attorney

2100-9279-7441, v. 1